** PART I **
ATTORNEY GENERAL LOVING HAS ASKED ME TO RESPOND TO YOUR REQUEST FOR AN OPINION ON THE FOLLOWING QUESTIONS:
 1. DOES ARTICLE XXIII , SECTION 2 OF THE OKLAHOMA CONSTITUTION PROHIBIT ALL CONTRACTING OUT OF PRISON LABOR, BOTH TO PRIVATE ENTERPRISE AND FOR PUBLIC WORK PROJECTS?
 2. IS IT CONSTITUTIONAL FOR THE OKLAHOMA DEPARTMENT OF CORRECTIONS TO CONT-ACT WITH EITHER PRIVATE ENTERPRISE OR OTHER STATE AGENCIES, MUNICIPALITIES, OR COUNTIES FOR THE PROVISION OF INMATE LABOR?
 3. DOES THE FACT THAT INMATES RECEIVE WAGES FOR THEIR WORK AFFECT THE CONSTITUTIONALITY OF THE ACT OF EITHER CONTRACTING OUT PRISON LABOR TO PRIVATE ENTERPRISE OR TO STATE GOVERNMENTAL ENTITIES?
 4. ARE THE PROVISIONS IN THE OKLAHOMA STATUTES AUTHORIZING PRISON LABOR IN THE MANNER SPECIFIED BY SUCH STATUTES CONSTITUTIONAL?
BECAUSE YOUR QUESTION MAY BE ANSWERED BY REFERENCE TO CONTROLLING CASE LAW, THE ISSUANCE OF AN OFFICIAL OPINION OF THE ATTORNEY GENERAL IS NOT NECESSARY. THE DISCUSSION WHICH FOLLOWS IS, THEREFORE, NOT AN OFFICIAL OPINION OF THE ATTORNEY GENERAL; IT REPRESENTS, RATHER, THE ANALYSIS AND CONCLUSIONS OF THE UNDERSIGNED ASSISTANT ATTORNEY GENERAL.
I. ARTICLE XXIII , SECTION 2 OF THE OKLAHOMA CONSTITUTION
YOUR FIRST QUESTION ASKS WHAT SPECIFIC ACTIVITY IS PROHIBITED BY ARTICLE XXIII , SECTION 2 OF THE OKLAHOMA CONSTITUTION. YOU DISTINGUISH BETWEEN CONTRACTS FORMED WITH PUBLIC ENTITIES AND THOSE FORMED WITH PRIVATE ENTITIES. ARTICLE XXIII , SECTION 2 OF THE OKLAHOMA CONSTITUTION PROVIDES, "THE CONTRACTING OF INMATE LABOR IS HEREBY PROHIBITED." OKLA. CONST. ARTICLE XXIII , SECTION 2.
TWO OKLAHOMA SUPREME COURT CASES PROVIDE THE ONLY AVAILABLE GUIDANCE FOR ANSWERING YOUR QUESTION. RICE V. STATE,232 P. 807 (OKLA.1925), INVOLVED A CONTRACT FORMED BETWEEN THE STATE AND A PRIVATE MANUFACTURER FOR THE PROVISION OF INMATE LABOR TO MANUFACTURE SHIRTS INSIDE THE STATE PENITENTIARY. THE RICE COURT HELD THAT THE CONTRACT FELL OUTSIDE THE SCOPE OF ARTICLE XXIII, 2, STATING THAT THE CONTRACT'S SOLE PURPOSE WAS NOT THE CONTRACTING OF CONVICT LABOR. THE COURT BASED ITS DECISION ON THE TERMS OF THE CONTRACT INVOLVED: THE STATE FURNISHED THE MACHINERY, EQUIPMENT, ALL MATERIAL, AND ALL LABOR, AND THE LABOR WAS PERFORMED IN THE PRISON AND UNDER THE STATE'S CONTROL. THEREFORE, THE PURPOSE OF THE CONTRACT WAS NOT SOLELY TO CONTRACT CONVICT LABOR.
THE RICE COURT DISTINGUISHED THE CONTRACT INVOLVED IN THE RICE CASE WITH ONE INVOLVED IN A UTAH CASE IN WHICH THE CONTRACT WAS DECLARED VOID UNDER A PROHIBITION SIMILAR TO ARTICLE XXIII , SECTION 2. THE CONTRACT IN THE UTAH CASE INVOLVED THE HIRING OF INMATES IN A CORPORATION OUTSIDE THE CONTROL AND MANAGEMENT OF THE STATE. THE RICE COURT INFERRED THAT THE FRAMERS OF THE CONSTITUTION DRAFTED ARTICLE XXIII , SECTION 2 FOR THE PURPOSE OF PROHIBITING THE "LEASING OR FARMING OUT" OF CONVICTS TO PRIVATE CORPORATIONS OR INDIVIDUALS, POTENTIALLY RESULTING IN CRUELTY TO THE PRISONERS. RICE AT 813.
IN SIBEL V. STATE BOARD OF PUBLIC AFFAIRS, 244 P.2D 307 (OKLA.1952), THE OKLAHOMA SUPREME COURT HELD THAT A CONTRACT BETWEEN THE STATE BOARD OF PUBLIC AFFAIRS AND THE STATE BOARD OF EDUCATION TO EMPLOY INMATES TO REPAIR BOOKS WAS CONSTITUTIONAL. THE SIBEL COURT CITED RICE AS AUTHORITY FOR DETERMINING THAT CONTRACTS IN WHICH THE EMPLOYMENT OF INMATES WAS INVOLVED DID NOT CONFLICT WITH ARTICLE XXIII , SECTION 2 OF THE CONSTITUTION. THE COURT DID NOT DISTINGUISH BETWEEN PRIVATE AND PUBLIC ENTITIES AS PARTIES TO SUCH CONTRACTS.
BASED ON THE RICE COURT'S ANALYSIS AND THE SIBEL COURT'S REINFORCEMENT OF THAT REASONING, ARTICLE XXIII , SECTION 2 PROHIBITS CONTRACTS FORMED SOLELY FOR THE PURPOSE OF "CONTRACTING OUT" INMATE LABOR WHEN THE CONTRACT RESULTS IN A PRIVATE ENTITY — AND NOT THE STATE — HAVING PHYSICAL CONTROL OVER THE INMATES. THUS, THE DISTINCTION BETWEEN PRIVATE AND PUBLIC ENTITIES IS NOT THE RELEVANT QUESTION; THE FACTORS TO CONSIDER WHEN DETERMINING WHETHER A CONTRACT INVOLVING INMATE LABOR CONFORMS WITH ARTICLE XXIII , SECTION 2, ARE THE PURPOSE OF THE CONTRACT AND THE AMOUNT OF CONTROL THE STATE RETAINS OVER THE INMATES INVOLVED IN THE CONTRACT. THE STATE MAY CONTRACT WITH PRIVATE INDUSTRY UNDER ARTICLE XXIII , SECTION 2 IF THE INMATES INVOLVED REMAIN SUFFICIENTLY IN THE CARE OF THE STATE AND IF THE PURPOSE OF THE CONTRACT IS ONE OTHER THAN THE CONTRACTING OF INMATE LABOR. OBVIOUSLY, IN CONTRACTS INVOLVING INMATE LABOR WHICH ARE MADE WITH PUBLIC AGENCIES, THE STATE RETAINS CONTROL OF THE INMATES. THEREFORE, ASSUMING SUCH CONTRACTS ARE MADE FOR A PUBLIC PURPOSE, CONTRACTS MADE WITH PUBLIC AGENCIES COMPLY WITH ARTICLE XXIII , SECTION 2.
II. CONSTITUTIONALITY UNDER ARTICLE II , SECTION 31
YOUR SECOND QUESTION CONCERNS THE CONSTITUTIONALITY OF THE OKLAHOMA DEPARTMENT OF CORRECTIONS' FORMATION OF CONTRACTS WITH PRIVATE ENTERPRISE OR WITH OTHER STATE AGENCIES AND POLITICAL SUBDIVISIONS OF THE STATE.
ARTICLE II , SECTION 31 OF THE CONSTITUTION OF THE STATE OF OKLAHOMA STATES, "THE RIGHT OF THE STATE TO ENGAGE IN ANY OCCUPATION OR BUSINESS FOR PUBLIC PURPOSES SHALL NOT BE DENIED NOR PROHIBITED, EXCEPT THAT THE STATE SHALL NOT ENGAGE IN AGRICULTURE FOR ANY OTHER THAN EDUCATIONAL AND SCIENTIFIC PURPOSES AND FOR THE SUPPORT OF ITS PENAL, CHARITABLE, AND EDUCATIONAL INSTITUTIONS."
OKLA. CONST. ARTICLE II , SECTION 31
THE OKLAHOMA STATUTES GRANT THE BOARD OF CORRECTIONS THE AUTHORITY TO FORM CONTRACTS. TITLE 57 O.S. 218 (1991) EMPOWERS THE DEPARTMENT OF CORRECTIONS TO CONTRACT WITH ANY REQUESTING PUBLIC AGENCY TO PROVIDE INMATE LABOR. TITLE 57 O.S. 549(A)(1) GIVES THE BOARD THE POWER TO MAKE LEASES OR OTHER CONTRACTS CONSISTENT WITH THE OPERATION OF PRISON INDUSTRIES. THUS, THE DEPARTMENT OF CORRECTIONS MAY ENTER INTO CONTRACTS UNDER ARTICLE II , SECTION 31, IF THE PURPOSE OF THE BUSINESS IS A PUBLIC ONE AND IS NOT EXPRESSLY EXCLUDED. ACCORDINGLY, THE CONSTITUTIONALITY OF A CONTRACT INVOLVING INMATE LABOR DEPENDS UPON WHETHER THE PURPOSE OF THAT CONTRACT IS A "PUBLIC" PURPOSE.
IN DETERMINING WHAT CONSTITUTES A "PUBLIC PURPOSE" UNDER ARTICLE II, 31, RICE V. STATE, 232 P. 807 (OKLA.1925), IS ONCE AGAIN THE AUTHORITY. IN RICE, THE COURT FOUND THAT A CONTRACT FORMED BETWEEN THE STATE AND A PRIVATE ENTITY WAS MADE FOR A PUBLIC PURPOSE. THE COURT BASED THAT CONCLUSION ON SEVERAL FACTORS: PRISONS ARE STATE INSTITUTIONS MAINTAINED BY THE STATE; THE PUBLIC, THROUGH TAXATION, SUPPORTS PRISONS; AND PRISONS ARE INDISPENSABLE TO STATE GOVERNMENT TO ENFORCE PENAL LAWS. BECAUSE OF THESE "PUBLIC" CHARACTERISTICS OF PENAL INSTITUTIONS AND BECAUSE THE COURT BELIEVED THAT EMPLOYMENT FOR INMATES IN THOSE PRISONS WAS NECESSARY, THE COURT CONCLUDED THAT CONTRACTS MADE FOR THE PURPOSE OF PROVIDING EMPLOYMENT FOR PRISONERS WERE FORMED FOR PUBLIC PURPOSES. THE COURT EXPLAINED THAT THE FACT THAT SUCH EMPLOYMENT MAY PRODUCE A MARKETABLE PRODUCT WHICH COMPETES WITH THE FREE MARKET DOES NOT TRANSFORM THE PUBLIC PURPOSE OF SUCH CONTRACTS INTO A PRIVATE PURPOSE. IT FOLLOWS THEN, THAT THE FACT THAT SOME CONTRACTS MAY PROVIDE FOR INMATE SERVICES WHICH COMPETE WITH SERVICES PROVIDED ON THE FREE MARKET DOES NOT MAKE THE PURPOSE OF THOSE CONTRACTS A PRIVATE ONE.
BASED ON THE RICE COURT'S ANALYSIS, CONTRACTS FORMED FOR THE PURPOSE OF PROVIDING INMATES WITH EMPLOYMENT ARE FORMED FOR A PUBLIC PURPOSE. SUCH CONTRACTS, THEN, ARE SANCTIONED BY THE CONSTITUTION AND LAWS OF THE STATE.